JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

STEFANIE BOONE

**(b)** County of Residence of First Listed Plaintiff: KENT
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

MATTHEW S. DePERNO, PO BOX 1595, PORTAGE, MI 49081, (269) 491-0213

## DEFENDANTS

FOREST HILLS PUBLIC SCHOOLS, LOWELL AREA SCHOOLS, CHRISTINE ANNESE, and NATE FOWLER

County of Residence of First Listed Defendant: KENT
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [X] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [X] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
42 U.S.C. § 2000e et seq.

Brief description of cause:
Violation of Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. ("ELCRA").

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE: JANE M. BECKERING    DOCKET NUMBER: 1:26-cv-02480

DATE: Nov 13, 2026

SIGNATURE OF ATTORNEY OF RECORD: /s/ Matthew S. DePerno

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

**SOUTHERN DIVISION**

STEFANIE BOONE

Plaintiff,

Case No. ______________________

v.

FOREST HILLS PUBLIC SCHOOLS, a Michigan general powers school district; LOWELL AREA SCHOOLS, a Michigan general powers school district; CHRISTINE ANNESE, individually; and NATE FOWLER, individually,

HON. _________________________

Defendants.
________________________________/

**VERIFIED COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, STEFANIE BOONE ("Plaintiff" or "Boone"), by and through her attorneys, DePERNO LAW OFFICE, PLLC, and for her Complaint against Defendants FOREST HILLS PUBLIC SCHOOLS ("FHPS"), LOWELL AREA SCHOOLS ("LAS"), CHRISTINE ANNESE ("Annese"), and NATE FOWLER ("Fowler") (collectively, "Defendants"), hereby alleges and states as follows:

**<u>NATURE OF THE ACTION</u>**

1. This is an action to redress Defendants' exclusion of Plaintiff from substitute teaching in their public schools because of her Christian religious beliefs

and her speech on matters of public concern. Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") against Defendants Forest Hills Public Schools and Lowell Area Schools; under 42 U.S.C. § 1983 for violation of her rights under the First and Fourteenth Amendments to the United States Constitution, against all Defendants; and under Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. ("ELCRA"), against all Defendants.

2. Plaintiff timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"): against LAS on or about September 17, 2024 [EEOC Charge No. 23A-2025-00623] and against FHPS on or about September 17, 2024 [EEOC Charge No. 23A-2025-00533], each within 300 days of the unlawful employment practices alleged herein.

3. The EEOC issued Plaintiff a Notice of Right to Sue as to LAS dated August 17, 2026, and a Notice of Right to Sue as to FHPS dated August 18, 2026. Plaintiff files this Complaint within 90 days of each notice.

4. Plaintiff's Title VII claims in this action are brought against LAS and FHPS only. Plaintiff's claims against her staffing employer, EduStaff, LLC, are pending in *Boone v. EduStaff, LLC*, No. 1:26-cv-02480 (W.D. Mich.). Plaintiff previously filed *Boone v. Lowell Area Schools*, No. 1:24-cv-00582 (W.D. Mich.), which concerns different conduct, namely a January 19, 2024 letter sent to Plaintiff

by LAS. This action concerns Defendants' later exclusion of Plaintiff from substitute teaching in September 2024.

## **JURISDICTION AND VENUE**

5. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights jurisdiction), and jurisdiction over the Title VII claims under 42 U.S.C. § 2000e-5(f)(3).

6. This Court has jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

7. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state-law ELCRA claims, which arise from the same case or controversy as her federal claims.

8. Venue is proper under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Defendants reside in, the events giving rise to this action occurred within, and Plaintiff would have worked within, the Western District of Michigan.

## **PARTIES**

9. Plaintiff Stefanie Boone is an individual and adult resident of Ada, Michigan.

10. Defendant Forest Hills Public Schools ("FHPS") is a general powers school district organized under the laws of the State of Michigan and is a "person" subject to suit under 42 U.S.C. § 1983, with its principal place of business at 620

Forest Hill Ave, SE, Grand Rapids, MI 48546. FHPS was Plaintiff's joint employer within the meaning of Title VII and ELCRA or, in the alternative, controlled Plaintiff's access to employment opportunities as a substitute teacher in FHPS.

11. Defendant Lowell Area Schools ("LAS") is a general powers school district organized under the laws of the State of Michigan and is a "person" subject to suit under 42 U.S.C. § 1983, with its principal place of business at 300 High Street, Lowell, Michigan 49331. LAS was Plaintiff's joint employer within the meaning of Title VII and ELCRA or, in the alternative, controlled Plaintiff's access to employment opportunities as a substitute teacher in LAS.

12. Defendant Christine Annese ("Annese") was, at all relevant times, the Assistant Superintendent of Human Resources, District Civil Rights Coordinator, and Anti-Harassment Compliance Officer for FHPS. She is sued in her individual capacity. At all relevant times, she acted under color of state law and as an agent of FHPS within the meaning of MCL 37.2201(a).

13. Defendant Nate Fowler ("Fowler") was, at all relevant times, the Superintendent of LAS. He is sued in his individual capacity. At all relevant times, he acted under color of state law and as an agent of LAS within the meaning of MCL 37.2201(a).

14. Non-party EduStaff, LLC ("EduStaff") is an educational staffing agency that partners with K-12 school districts, including FHPS and LAS, to recruit, hire, and place substitute teachers and support staff.

## STATEMENT OF FACTS

15. Plaintiff is a certified teacher. EduStaff hired her as a substitute teacher on September 9, 2024, for placement in partner districts, including FHPS and LAS.

16. EduStaff operates an application called "Red Rover" through which substitute teachers search for and accept assignments with partner districts. Each partner district controls which substitute teachers may see and accept its assignments.

17. Since the fall of 2020, Plaintiff has been an outspoken conservative Christian and advocate against certain school board policies at LAS and FHPS that she believes violate and conflict with her deeply held religious convictions, including the introduction and distribution of certain books ("LGBTQ+ Storybooks") that Plaintiff contends promote one-sided transgender ideology, encourage gender transition, and focus on sex and drug use, without parental notification or the opportunity to opt out.

18. Plaintiff's children have attended LAS and FHPS, and she presently has two children attending LAS.

19. Plaintiff holds a sincere religious conviction that the LGBTQ+ Storybooks are age-inappropriate and inconsistent with her religious beliefs, practices, and child-raising philosophy.

20. Some of the books at issue that are available to children through the school libraries include the following:

(1) *What Girls Are Made Of* by Elana K. Arnold is a book that contains explicit sexual nudity and sexual activities. It details a young woman's journey through abortions, sex, and masturbation with description in graphic detail.

(2) *All Boys Aren't Blue* by George M. Johnson is a book about sex, drug use, and instructs that gender is a construct of society, not a reality, and that boys can be girls and girls can be boys.

(3) *Nineteen Minutes* by Jodi Picoult is a book that pushes "LGBTQ-inclusive" themes.

(4) *Tilt* by Ellen Hopkins is a book that includes sexually explicit language and sexual assault involving minors. The book tells the story about three different teenagers. One becomes pregnant, the second gets into a relationship with a boy who is HIV positive, and the third falls in love with an older boy, changes her appearance to get his attention but ends in self-destruction.

(5) *The Sun and Her Flowers* by Rupi Kaur is a collection of poems with graphic sex, assault, and abortion. This book states that "virgin praising is rape culture."

(6) *Me and Earl and the Dying Girl* by Jesse Andrews tells the story of an awkward high school student, his best friend, and their terminally ill classmate. It contains graphic depictions of cunnilingus.

(7) *Tricks* by Ellen Hopkins tells the story of five troubled teens and contains graphic scenes of child rape and abuse, graphic violence, and child prostitution.

(8) *Romeo and/or Juliet*, by Ryan North is a choose your own sex adventure. The end of the book contains a link to a website that includes comics where kids can learn about gender bending, trans issues, vibrators, dildos, anal toys, penis toys, lubes, barriers, harnesses, packing, BDSM, and porno sites.

21. Plaintiff has posted comments on social media, and has spoken during the public comment period at LAS and FHPS school board meetings, county commissioner meetings, and State Board of Education meetings, regarding her concerns about the LGBTQ+ Storybooks and her religious convictions. Plaintiff

believes parents have a right to be informed about curriculum and materials in schools funded with taxpayer dollars.

22. During these public comments, Plaintiff has shared her conservative, Christian perspective on education. She has spoken respectfully, calmly, factually, and professionally, and has not threatened anyone.

23. Plaintiff, by contrast, has been the target of threats and hostility from others because of her viewpoint.

24. Plaintiff has spoken privately with LAS and FHPS officials and administrators about her concerns regarding the LGBTQ+ Storybooks and related school board policies.

25. Plaintiff has sought to be constructively involved with both LAS and FHPS. She has sought appointment to schoolwide committees, including the Parent Advisory Committee, the Reproductive Health Committee, and the Diversity, Equity, and Inclusion Team; each such request was denied.

26. Plaintiff has requested to assist LAS and FHPS with their library media cataloging system, Destiny, and its parent company, OverDrive, to develop a better system for cataloging library books so that parents can make informed decisions about the books available to their children. This request was denied.

27. Plaintiff has requested to work with school CIPA compliance officers to help ensure the districts' compliance with federal law restricting student access to sexually explicit material. This request was denied.

28. In response to her advocacy, Plaintiff has been mocked and disparaged by others on social media and at school board meetings, including by LAS and FHPS officials, on account of her religious viewpoint. She has been called a racist, bigot, misogynist, homophobe, and "Christian Nationalist."

29. LAS and FHPS officials have told Plaintiff that she "should be part of the solution" rather than "attacking" the schools. This was part of Plaintiff's motivation for becoming a substitute teacher, to contribute constructively as a qualified educator, particularly given the well-documented substitute teacher shortage affecting both districts.

30. Both LAS and FHPS posted signs seeking substitute teachers, and the shortage was discussed at school board meetings.

31. For these reasons, Plaintiff sought to substitute teach in LAS, where two of her children still attend, and FHPS, where her family resides and from which she graduated.

32. On or about January 19, 2024, LAS, through Stephen Gough, sent Plaintiff a cease-and-desist letter regarding Plaintiff's Christian-based posts, stating that LAS was "compelled to request that [Stefanie Boone] immediately cease and

desist from any reference to any Lowell Area Schools employee on social media and/or other public communication platforms." He added that "[f]ailure to comply with this request [would] be perceived as a deliberate and inappropriate act against the involved staff and the District . . . and may result in further action including but not limited to all available legal remedies." Moreover, to "ensure a safe and appropriate environment for all students and staff," Gough "direct[ed] that [Boone] have no contact with [school] staff without prior permission from the involved building principal or the superintendent." "Failure to comply with this directive," he warned, could "result in further restrictive action including but not limited to an order of no trespass prohibiting [Boone's] presence at all school functions."

33. Fowler confirmed that he had approved the cease-and-desist letter in writing on January 25, 2024.

34. Plaintiff's post expressed her Christian faith, and LAS's letter was a response to the religious content of that post and to Plaintiff's advocacy. The letter warned Plaintiff that LAS could take further action against her.

35. Plaintiff completed EduStaff's application and hiring process, including a background check and fingerprinting, and was hired by EduStaff on September 9, 2024.

36. Once hired, Plaintiff selected LAS and FHPS as her "favorite" districts within the Red Rover system. LAS and FHPS were thereby made aware of Plaintiff's interest in substitute teaching for them.

37. Each district separately approved or denied a substitute's access to its postings through Red Rover and could revoke that access at any time. On information and belief, neither district needed EduStaff's approval to do so.

38. LAS and FHPS each approved Plaintiff's access to their postings on September 9, 2024. EduStaff's approval of Plaintiff followed at 10:05 a.m. that day.

39. LAS and FHPS each determined which classrooms and students a substitute teacher would be assigned, directed the substitute's work in the district's buildings, supervised the substitute while on assignment, and required the substitute to follow district policies. EduStaff told Plaintiff to follow the policies of the district in which she worked. FHPS paid Plaintiff for the day she worked in its schools.

40. On September 11, 2024, Plaintiff used Red Rover to request a substitute teaching assignment with LAS at Lowell Middle School for September 13, 2024. On September 12, 2024, EduStaff notified Plaintiff that the assignment had been cancelled.

41. Plaintiff immediately accepted another LAS assignment for September 13, 2024, at Lowell High School. On the morning of September 13, 2024, EduStaff notified her that this assignment, too, had been cancelled.

42. Plaintiff then discovered an email from Fowler, sent at 6:00 a.m. on September 13, 2024, and copied to Dustin Cichocki, stating: "Based on our technology use policy and concerns about creating a disruption to the school environment, we do not need your services as a substitute teacher." Fowler made the decision to exclude Plaintiff from substitute teaching in LAS.

43. Fowler applied LAS's social media or technology use policy to Plaintiff, who had not yet worked a single day in the district and had not used any LAS technology.

44. At 6:56 a.m. that morning, Plaintiff emailed Fowler requesting clarification, noting she had not yet worked a day in the district and asking him to explain the basis for his concerns. Fowler did not respond. On September 14, 2024, Plaintiff's ability to accept LAS jobs through Red Rover was revoked.

45. On September 14, 2024, Plaintiff opened a support ticket with EduStaff asking why she had been removed from the LAS position. She sent a detailed follow-up stating: "I have been a vocal, concerned parent, about some of the things we are seeing go on in our children's schools, however I have a clean background, excellent teaching experience, am well qualified, and was approved through EduStaff. Just because we may not see eye to eye on everything shouldn't mean I cannot teach in my children's schools, correct?" On September 16, 2024, EduStaff's Jill Moore

responded but did not identify any conduct by Plaintiff that justified her exclusion from LAS.

46. On September 16, 2024, Plaintiff sent Fowler a second request for clarification. Fowler again did not respond.

47. On October 7-8, 2024, LAS, through Dustin Cichocki, attempted to offer a different explanation for the cancellations, that a "floater" substitute was available to fill the assignments. That explanation is inconsistent with Fowler's September 13, 2024 email, which gave a different reason, and with LAS's revocation of Plaintiff's access to all LAS assignments.

48. A friend of Plaintiff's sent her a screenshot from a private Facebook group titled "STOP the FHPS Attacks!!," created by individuals in the FHPS community opposed to Plaintiff's advocacy regarding the LGBTQ+ Storybooks. Although Plaintiff was blocked from the group, the screenshot showed a post stating: "Ok guys. This is not ok. If Boone tries to teach at fhps, all hands need to be on deck." On information and belief, group members included LAS and FHPS staff, and the post was understood as a call to prevent Plaintiff from substitute teaching at FHPS.

49. Plaintiff accepted a substitute teaching assignment at Forest Hills Northern High School through Red Rover for September 17, 2024.

50. Within minutes of arriving in her assigned classroom on September 17, 2024, Plaintiff was directed to report to the administrative office, where she met with Annese.

51. Annese terminated Plaintiff's substitute teaching assignment and informed her that FHPS would not use her services again. Annese cited two reasons: (a) comments Plaintiff made during the public comment period of an April 2022 FHPS board meeting; and (b) an allegation that Plaintiff had photographed a student and posted the photograph on social media. Plaintiff denies the allegation because no such post exists. Annese could not substantiate it with any evidence, as Plaintiff's contemporaneous recording of the conversation reflects.

52. Later that day, Plaintiff emailed FHPS Superintendent Ben Kirby describing the incident in detail and requesting an explanation. Kirby responded on September 19, 2024, stating only that he was "aware of the situation" and that FHPS Human Resources would contact EduStaff "if we are interested in contracting for [Plaintiff's] services as a substitute teacher in the future." Kirby did not provide the factual basis for Annese's decision and did not reverse it.

53. Plaintiff's remaining FHPS assignments were cancelled, and her ability to accept FHPS jobs through Red Rover was revoked.

54. Since that time, Plaintiff has continued to receive emails and calls from FHPS secretaries and office staff asking her to substitute teach because of the ongoing substitute shortage.

55. Plaintiff called EduStaff on September 17, 2024, and was connected to Jodi Center directly. Center stated that EduStaff had received several reports about Plaintiff and had seen evidence that demonstrates a lack of respect for, and disregard of, school standards. Center stated that she had sent Plaintiff an email earlier that day and then described to Plaintiff what the mail said. Center directed Plaintiff to stop sharing personal opinions or beliefs which a student could construe as offensive, disparaging, or unduly influencing or persuasive on a sensitive subject. She mentioned specifically listing religion, politics, current events, race, color, national origin, age, sex, gender identity, sexual orientation, and disabilities.

56. During that call, Plaintiff asked for an accommodation that she be permitted to substitute teach and that she would not express any views regarding LGBTQ+ Storybooks, religion, politics, current events, race, color, national origin, age, sex, gender identity, sexual orientation, and disabilities while in the classroom. Center rejected her request and told Plaintiff that her exclusion was based on "various community members and staff who have reached out to her with concerns about [Plaintiff]," and that it was based around Plaintiff's "opposition to inclusion." Center stated that Plaintiff should read her email from earlier that day and that the

email was a "reminder" that "if [Plaintiff] continue[d] in the direction that [she had] been headed, there will be further action taken," and that Center "viewed [Plaintiff's] call to her as a threat."

57. EduStaff took no steps to independently investigate or verify the reports and complaints relayed to it, and never responded to the specific accommodation Plaintiff had proposed to Jodi Center, before terminating Plaintiff's employment and revoking her Red Rover access to both districts.

58. After the phone call, Plaintiff located the email, titled "Edustaff expectations," in her spam folder. It was sent on September 17, 2024, at 2:04 p.m. The email in some way mirrored the telephone conversation and stated that EduStaff had "received several reports stating concern of [Plaintiff's] recent hire" and had "seen evidence that demonstrates a lack of respect for, and disregard of, school standards." It directed Plaintiff to "refrain from sharing personal opinions or beliefs which a student could construe as offensive, disparaging, or unduly influencing or persuasive on a sensitive subject," specifically listing "religion, politics, current events, race, color, national origin, age, sex, gender identity, sexual orientation, and disabilities."

59. On information and belief, the concerns of "community members and staff" that Center described originated from LAS and FHPS personnel and community members opposed to Plaintiff's religious viewpoint and advocacy,

including individuals responsible for the "STOP the FHPS Attacks!!" Facebook group.

60. On September 19, 2024, Plaintiff responded to Center by email, asking her to identify who had made the "several reports" and what "evidence" was being relied upon. Plaintiff received no substantive response.

61. Neither LAS nor FHPS identified any classroom conduct by Plaintiff, any policy she violated while working, or any disruption she caused. Plaintiff had worked, at most, part of one morning in either district.

## COUNT I
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, et seq.
## RELIGIOUS DISCRIMINATION

**(Against Defendants LAS and FHPS)**

62. Plaintiff restates and incorporates by reference all preceding paragraphs.

63. Title VII makes it unlawful to discriminate against an individual with respect to the terms, conditions, or privileges of employment because of the individual's religion. 42 U.S.C. § 2000e-2(a)(1).

64. Plaintiff is a practicing conservative Christian. Her sincerely held religious beliefs include her objection to the LGBTQ+ Storybooks, and she acts on those beliefs by speaking publicly about them and by sharing her faith, including through the social media post that prompted LAS's January 19, 2024 letter.

65. LAS and FHPS each knew of Plaintiff's religious beliefs and expression no later than September 2024, from her public comments, her social media posts, LAS's January 2024 letter, and their own officials' remarks about her "Christian" viewpoint.

66. LAS and FHPS were each Plaintiff's joint employer. Each controlled whether she could work in its schools through its power to approve and revoke her Red Rover access; each controlled her assignments, supervision, and conduct while on assignment; and FHPS paid her for work in its schools.

67. In the alternative, even if EduStaff was Plaintiff's sole employer, LAS and FHPS each used their control over access to their schools to interfere with Plaintiff's employment opportunities with EduStaff because of her religion, and are liable under Title VII for doing so.

68. LAS and FHPS excluded Plaintiff from substitute teaching because of her religion and her religious expression. The evidence includes: LAS's January 19, 2024 letter responding to Plaintiff's religious post; Fowler's decision to exclude Plaintiff before she had worked a single day; Annese's reliance on Plaintiff's public comment and an unsubstantiated allegation; the "STOP the FHPS Attacks!!" post; EduStaff's September 17, 2024 email listing "religion" among the subjects Plaintiff was told to stop discussing, and Center's statement that Plaintiff's exclusion was based on her "opposition to inclusion."

69. The reasons LAS and FHPS have given are pretext. Fowler's stated reasons, the technology use policy and disruption, did not apply to a person who had not yet worked in the district, and LAS has since offered a different explanation. Annese's stated reasons were a board comment made more than two years earlier and an allegation she could not substantiate. Neither district investigated, and neither responded to Plaintiff's requests for an explanation.

70. As a direct and proximate result, Plaintiff has lost wages and benefits and has suffered emotional distress, humiliation, embarrassment, and damage to her reputation, and she will continue to suffer such damages in the future.

71. LAS and FHPS acted intentionally and with reckless disregard of Plaintiff's federally protected rights.

**COUNT II**
**42 U.S.C. § 1983, VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS**

**FIRST AMENDMENT RETALIATION**

**(Against All Defendants)**

72. Plaintiff restates and incorporates by reference all preceding paragraphs.

73. At all relevant times, Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983.

74. Plaintiff's public comments at school board, county commission, and State Board of Education meetings, and her related social media commentary,

addressed matters of significant public concern, namely the content of public school library and curricular materials and parental rights in public education. They also expressed her religious beliefs. That speech is protected by the First Amendment.

75. Plaintiff spoke as a private citizen and parent, not pursuant to any official duties. See *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

76. Plaintiff's exclusion from substitute teaching in LAS and FHPS was an adverse action that would deter a person of ordinary firmness from continuing to speak. A public body may not deny a person an opportunity in retaliation for protected speech. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

77. Plaintiff's protected speech was a substantial and motivating factor in each adverse action. LAS had already sent Plaintiff the January 19, 2024 letter in response to her speech, and Fowler's September 13, 2024 exclusion was the further action that letter threatened. Fowler excluded Plaintiff before she had worked a day, citing a policy that did not apply to her.

78. Annese terminated Plaintiff's assignment and barred her from FHPS on September 17, 2024, citing Plaintiff's April 2022 public comments, which are speech protected by the First Amendment, and an allegation she could not substantiate. A public body may not penalize the viewpoint a citizen expresses in public comment. *See Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887 (6th Cir. 2021).

79. Center's statements that Plaintiff's exclusion rested on reports from "community members and staff" and her "opposition to inclusion" confirm that Plaintiff's viewpoint, not any conduct in a classroom, motivated the exclusions.

80. Defendants would not have excluded Plaintiff from substitute teaching absent her protected speech.

81. Fowler is the Superintendent of LAS. His decision to exclude Plaintiff was made pursuant to the board policy that delegates to the Superintendent final authority over substitute staffing, under which he is LAS's final policymaker for this decision, and it is therefore the official policy of LAS. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). In the alternative, LAS is liable because it has a custom of excluding Plaintiff because of her speech, as shown by the January 19, 2024 letter and the September 13, 2024 exclusion, and because its final decisionmaker approved and adopted both.

82. Annese possesses final authority over substitute-teacher exclusion decisions for FHPS under the board policy that delegates that authority to her, and her decision is therefore the official policy of FHPS. In the alternative, FHPS ratified Annese's decision and its basis when Superintendent Kirby, after receiving Plaintiff's detailed account, stated that he was "aware of the situation" and left the exclusion in place without investigation.

83. The right to be free from retaliation for speech on matters of public concern, including parental criticism of a school district's policies, was clearly established in September 2024. Fowler and Annese are not entitled to qualified immunity.

84. As a direct and proximate result, Plaintiff has suffered lost wages and earning capacity, emotional distress, humiliation, and damage to her professional reputation.

85. Fowler and Annese acted with malice or reckless indifference to Plaintiff's clearly established constitutional rights, entitling Plaintiff to punitive damages against each of them in their individual capacities.

**COUNT III**
**VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT,**
**MCL 37.2101 et seq.**

**RELIGIOUS DISCRIMINATION**

**(Against All Defendants)**

86. Plaintiff restates and incorporates by reference all preceding paragraphs.

87. ELCRA prohibits an employer, or its agent, from discriminating against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of religion. MCL 37.2202(1)(a). ELCRA defines "employer" to include an agent of the employer. MCL 37.2201(a).

88. LAS and FHPS were Plaintiff's employers within the meaning of ELCRA, for the reasons alleged in Count I. Fowler and Annese were agents of LAS and FHPS, respectively, and each personally made the decision to exclude Plaintiff.

89. Defendants excluded Plaintiff from substitute teaching at least in part because of her religion and her religious expression, for the reasons alleged in Count I.

90. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, humiliation, embarrassment, and damage to her reputation, and she will continue to suffer such damages in the future.

91. Defendants acted intentionally and in reckless disregard of Plaintiff's rights under Michigan law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Stefanie Boone, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, and award:

a. Back pay and lost benefits;

b. Compensatory damages for emotional distress, humiliation, embarrassment, and reputational harm;

c. Punitive damages against Defendants Annese and Fowler in their individual capacities;

d. Reinstatement of Plaintiff's Red Rover access to LAS and FHPS, or front pay in lieu thereof;

e. A declaration that Defendants' conduct violated Plaintiff's rights under Title VII, ELCRA, and the First Amendment;

f. Injunctive relief prohibiting Defendants from excluding Plaintiff from substitute teaching because of her religion or her protected speech;

g. Pre- and post-judgment interest;

h. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), and MCL 37.2802; and

i. Such other relief as the Court deems just and equitable.

Respectfully submitted,

DePERNO LAW OFFICE, PLLC

DATED: November 13, 2026

Matthew S. DePerno (P52622)
Attorney for Plaintiff
PO Box 1595
Portage, MI 49081
(269) 491-0213

**VERIFICATION**

I, STEFANIE BOONE, being first duly sworn, depose and state that I am the Plaintiff in the above-captioned matter, that I am familiar with the facts alleged herein, and that the foregoing Verified Complaint is true to the best of my knowledge, information and belief.

Dated: November 13, 2026

STEFANIE BOONE

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

**SOUTHERN DIVISION**

STEFANIE BOONE

Plaintiff, Case No. ______________________

v.

FORESTHILLS PUBLIC SCHOOLS, a Michigan general powers school district; LOWELL AREA SCHOOLS, a Michigan general powers school district; CHRISTINE ANNESE, individually; and NATE FOWLER, individually, HON. ________________________

Defendants.
________________________________/

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff, STEFANIE BOONE, demands a trial by jury on all issues so triable.

Respectfully submitted

DePERNO LAW OFFICE, PLLC

Dated: November 13, 2026 ______________________________

Matthew S. DePerno (P52622)
Attorney for Plaintiff
PO Box 1595
Portage, MI 49081
(269) 491-0213